IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| PATRICK S. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 00-RRA-1371-NE |
| ) | |
| WARDEN RALPH HOOKS, ) | |
| MR. WILLIAM DOBBS, Supervisor ) | |
| of Health Care Unit; ) | |
| MS. HICKS /Mrs. Diane Strozier, Nurse, ) | |
| ) | |
| Defendants. ) | |

**ENTERED**
MAR 28 2002

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Patrick S. Wilson, alleges that his constitutional rights were violated while he was incarcerated at Limestone Correctional Facility in Capshaw, Alabama. In his *pro se* complaint, plaintiff names as defendant Mr. William Dobbs, Supervisor of the Health Care Unit at Limestone Correctional Facility.[1] As compensation for the alleged constitutional violations, plaintiff seeks monetary damages. In

---

[1] The plaintiff also named Warden Hooks, Ms. Hicks, and Mrs. Strozier as defendants in his complaint. On November 28, 2000, the magistrate judge entered a report and recommendation, recommending that the plaintiff's allegations against defendant Hooks be dismissed pursuant to 28 U.S.C. §1915A(b)(1). On December 22, 2000, the district judge adopted the recommendation of the magistrate judge, and dismissed the claims against Warden Ralph Hooks.
   Further, on January 3, 2001, the magistrate judge entered an Order for Special Report, and directed the clerk to serve a copy of same upon defendants Hicks and Strozier. However, the Special Report mailed to these defendants was returned to the court by the U.S. Postal Service as undeliverable. A notation on the front of the envelope shows that defendants Hicks and Strozier are the same defendant. However, said defendant was no longer an employee of the D.O.C., left no forwarding address and no accurate telephone number. On January 18, 2001, the magistrate judge ordered the plaintiff to provide an accurate address for defendant Hicks/ Strozier. The plaintiff was instructed that failure to provide an address to Hicks/ Strozier within fifteen (15) days of the entry date of the order would result in the dismissal of the defendant(s) from the action. The plaintiff failed to provide the address(es). Accordingly, on February 20, 2001, the district judge dismissed without prejudice the claims against defendants Hicks/Strozier for lack of prosecution.

accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint was referred to the magistrate judge for a preliminary review and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The magistrate judge entered an Order for Special Report (Document # 10) directing that a copy of the complaint in this action be forwarded to defendant Dobbs, requesting that he file a special report addressing the factual allegations of the plaintiff's complaint. The defendant was advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendant he should file counter affidavits if he wished to rebut the matters presented by defendant in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

On March 5, 2001, defendant Dobbs filed a special report (Document # 12) accompanied by affidavits and pertinent documents. Plaintiff was thereafter notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff filed no response.

### SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of

2

law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

3

## FACTS

**Plaintiff's complaint**

Plaintiff contends that he has been subjected to cruel and unusual punishment while housed at Limestone Correctional Facility, in Capshaw, Alabama in the form of inadequate medical care. He asserts that defendant Dobbs is the supervisor of "the Health Care Unit [(HCU)]and fail[ed] to do his job in proper[ly] training . . . his nurse[s] causing them to do their job poorly." (Document # 1, at 5).

As his factual basis for same, plaintiff asserts that on March 5, 2000, he "went to the HCU for sever[e] pain to [his] lower stomach. . . ." *Id.* at 3. The nurse, Ms. Hicks[2], asked plaintiff questions to which he responded. *Id.* Thereafter, Ms. Hicks proceeded to take the plaintiff's temperature, but plaintiff had to excuse himself to vomit. *Id.* After he had vomited, the plaintiff informed Ms. Hicks he had previously experienced an upset stomach, and what he was presently suffering from was "no upset stomach." *Id.* at 3-4. Nurse Hicks responded by saying, "Oh well," and sent the plaintiff back to his dorm room with a nausea pill, two Tylenol and two Rolaids, while informing the plaintiff that this was "a one time deal." *Id.* at 4. The plaintiff remained in severe pain, and at 9:00 a.m. the next morning, he was rushed to the "Hospital for a ruptured appenditicis (sic) and almost lost [his] life. {He} had less than seven hour[s] to live." *Id.* Plaintiff also contends that on May 14, 2000, upon advice of the Shift Commander, he attempted to inform nurse Strozier that "a lump growing inside [his] lower stomach," but she stated that she did not care who sent the plaintiff to be examined and instructed the plaintiff to go back to the shift office. *Id.* at 5. A Corrections Officer escorted the plaintiff to the HCU a second time; however, Nurse Strozier told

---

[2] Defendant contends, and plaintiff has not denied, that nurse Hicks and nurse Strozier are one and the same person.

the plaintiff that he would have to sign up for sick call at a proper time, and refused to examine him. *Id.*

**Defendant's Response**

Defendant Dobbs responds to the plaintiff's allegations by alleging the following affirmative defenses: (1) the plaintiff is not entitled to relief under 42 U.S.C. § 1983; (2) the plaintiff fails to state a claim for which relief may be granted; (3) qualified immunity; (4) no liability under Respondeat Superior or any other theory of vicarious liability; (5) discretionary function immunity; (6) plaintiff's request for punitive damages is violative of the defendant's rights to procedural due process under the United States and Alabama Constitutions; (7) the defendant is not responsible for the policies and procedures of the Alabama Department of Corrections; and (8) the plaintiff is not entitled to relief under any Federal or State statutory grounds or common law of action. (Document # 18) at 2.

Defendant Dobbs was not personally involved in the incidents about which the plaintiff complains. (Exhibit A to Document # 18). The only indication of Dobbs' knowledge of these events appears to be a notification of the plaintiff's need for surgery on the morning of March 6, 2000, when surgery was already in progress at the direction of Dr. Khouri. (Exhibit B to Document # 18) at 8. Further, Dobbs attests that medical records show that between March 5, 2000, and March 6, 2000, Nurse Strozier provided adequate care with regard to plaintiff's symptoms of nausea as well effective monitoring of the plaintiff's condition such that discovery and repair of his burst appendix was carried out in a timely fashion. (Exhibit A to Document # 18) at 2.

Defendant Dobbs also states that the medical records show at 3:50 p.m. on May 14, 2000, the plaintiff "was in the HCU lobby requesting to know about times to sign up for sick call." *Id.*

Upon being informed by Nurse Strozier that "the latest time to sign up was 2:00 p.m.," the plaintiff began shouting that he was being denied medical attention and that the shift commander had sent him to HCU to receive medical attention. *Id.* and (Exhibit B to Document # 18) at 45. Nurse Strozier checked with the shift commander, and the shift commander stated that he sent the plaintiff to HCU in order for him to sign up for sick call. "Inmate was not sent by the shift commander's officer per Sgt. Shield." *Id.* "Mr. Wilson signed up for sick call for May 15, 2000, but was a NO SHOW." (Exhibit A to Document # 18) at 2.

## **NURSE DOBBS**

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct 285, 50 L.Ed.2d 251 (1976). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated in *Estelle, supra*, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). *See also Estelle v. Gamble, supra*, at 106-08.

A burst appendix is certainly a serious medical need. However, it is undisputed that nurse Strozier did examine and afford the plaintiff medication for his nausea and stomach pain the night

6

before his surgery. There is no indication that plaintiff informed anyone that his sickness continued to persist throughout the evening. After the plaintiff informed medical professionals the next morning that he was still feeling extremely ill, steps were immediately taken to examine, test, diagnose, and operate on the plaintiff for a burst appendix. Plaintiff does not deny that he was afforded adequate aftercare for his medical condition, nor has he provided any medical evidence that the delay in his treatment caused him any permanent injury. While the plaintiff's complaints with regard to nurse Strozier could be construed as a difference of opinion in the treatment of his illness or perhaps a claim against Strozier for negligence or medical malpractice, neither is commensurate with any act of cruel and unusual punishment envisioned by the United States Constitution. Plaintiff's claims regarding his inability to see a medical professional on May 14, 2000, are also without merit. It is undisputed that plaintiff appeared for sick call after sick call was already closed for the day. Further, it is undisputed that plaintiff was scheduled for a sick call appointment on May 15, 2000, but failed to come to his appointment. The plaintiff has shown no set of facts which convince this court that he was subjected to cruel and unusual punishment through the actions or inactions of Strozier.

Even if there deliberate indifference on the part of Strozier, Dobbs cannot be held liable for it. "While the doctrine of *respondeat superior* does not apply to § 1983 cases, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> [A] causal connection [between the supervisor's actions and the alleged deprivation] can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration . . . .

*Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 933 (1991). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

Plaintiff has not established that defendant Dobbs was aware of any of his complaints. Nor has he established any obvious, continuous, and widespread abuse necessary to have put Dobbs on notice that additional training or supervision of nurse Strozier was necessary. Consequently, this action is due to be dismissed as to defendant Dobbs.

## **CONCLUSION**

For the foregoing reasons, the Court finds that defendant Dobbs' special report is due to be treated as a motion for summary judgment, and, as such, be granted and the claims against him dismissed. An appropriate order will be entered.

DONE this the 28th day of March, 2002.

J. FOY GUIN, JR.
UNITED STATES DISTRICT JUDGE